that you were appointed to represent Mr. Rinehart in this case. That's correct, Your Honor. We appreciate your accepting the appointment and representing him. Thank you. Good morning, Your Honors. It may please the Court. My name is Kendall Turner. For the appellant, Michael Rinehart, I've reserved three minutes for rebuttal. Rinehart's pro se complaint adequately pled every element of his claims that his prison and its officials failed to accommodate his disability and retaliated against him for the District Court. Nevertheless, Sua Sponte dismissed his complaint under Section 1915 of the Prison Litigation Reform Act, holding that Rinehart had failed to state a claim. That was error. Rinehart adequately pled every element of each claim. As to his failure to accommodate claim, he pled that he had a disability, here diverticulitis, that he was otherwise qualified for a benefit, here level six privileges, and that he was Namely, that the prison forced him to choose between enjoying the benefits to which he was entitled or having access to a bathroom in his cell, an accommodation that the prison doctor had ordered specifically in light of his disability. Similarly, as to his ADA retaliation claim, Rinehart pled every required element. He pled that he initiated ADA grievance procedures and that he believed he had a valid ADA claim and that subsequently the prison retaliated against him by rescinding his medical classification without even examining him to determine whether or not his disability had changed. So you're asserting that he is saying he was retaliated for filing the ADA claim, or was it for the accommodation? For filing the ADA claim. Okay. All right. So he filed an ADA claim as to the visitation room issue, it's a different issue, in 2014 and supplemented that, or I guess it was January 2015, supplemented that filing to add his claim about his privilege levels in 2016. The visitation room issue was remedied in 2017, but he still had this other claim and after seeing their progress, his wife reached out to the prison officials and when she did so, the response was that the prison officials told her that they would be rescinding his medical classification. So it was his follow-up on the accommodation request. Exactly. And when you use the word claim, are we talking about the same thing as a grievance? Is there a difference? I mean, well, let me put it this way. In my mind, a claim is what we have right now, it's the lawsuit. But under Prison Litigation Reform Act, you have to go through the grievance procedure before you can file a lawsuit. So is it the grievance that gave rise to the alleged retaliation, or is it the filing of the lawsuit? So it would be the grievance that gave rise to it, but he initiated the ADA grievance procedures, as you said, because he has to comply with the PLRA's requirement to go through the prison's grievance requirements. And as a result of doing that, the prison retaliated against him. But because the grievance concerned an ADA issue, he is protected from retaliation under the ADA. And he did, in fact, file also an ADA grievance or complaint with the Office of Civil Rights, and it was subsequent to that that the retaliation occurred as well. But the district court here never even addressed Reinhart's retaliation claim. And as to his failure to accommodate claim, the only reason the district court gave for rejecting that claim was that Reinhart had not alleged total deprivation of bathroom access. He had only alleged partial deprivation of bathroom access. But the district court cited nothing to support its conclusion that he was required to plead total deprivation of bathroom access. And that's because there's no case law to support that conclusion. Because the district court did not address either of his claims fully, we asked this court to reverse. And if there are no further questions, I will sit down. All right. Thank you. Mr. Hill? You're at a bit of a disadvantage because you haven't even had an opportunity to respond to this case at all yet, have you? Correct. Correct. It is of an unusual procedural posture. This case was dismissed on initial review order, so we were not technically ordered to file a response. However, Mr. Reinhart appealed the case. And what sometimes happens procedurally is we find out about the appeal, and like in this case, I wrote to the clerk of the Eighth Circuit and said, hey, there's this appeal. Do you want the state to participate, even though we weren't served? And given that also he was appointed counsel, it kind of made sense for both sides to kind of come in and give this case a full examination of the legal issues that were raised by the parties. And so I think procedurally, that's why we're all here. And I think the point of the Iowa prison officials in this case is that the case was properly dismissed on initial review. And I know that we started this case in terms of thinking about ADA retaliation, but in essence what the case is about is an offender claimed that he had a right to a toilet in a cell, but the privilege level to which he was potentially entitled to didn't have toilets in his cell. And so the question is, in which unit should he be in? And he was assigned to the unit where the toilet was in his cell, which kind of complied with his medical restrictions. And so that's the conundrum, and what we argued on appeal was, hey, this doesn't necessarily state a constitutional violation, and we went through that analysis. And I get that that's not necessarily kind of raised or framed up the way it should be, but the point in this case was that you can't somehow bootstrap otherwise these constitutional claims into an ADA claim, and looking at what the court has to decide, if it is analyzed under an ADA compliance type issue, the prison officials did the proper thing, and the case was properly dismissed by the district court, specifically in that, did he have a condition, and I don't think there's a dispute that he had the diverticulitis. The question is, does that require one to be near a toilet all the time? And I think most telling was, in the court's analysis, was in the response to one of the grievances, they said, okay, Mr. Reinhart, we will give you a cell in the unit which has your privileges, and we'll put you, there won't be a toilet in your cell, but we'll put you real close to one. But the accommodation, the accommodation request is the toilet in the cell, correct? With the privilege levels. Well... I admit, it's a little confusing. But he's entitled to, there's no dispute that he's entitled to what I think is level six, is that correct? The problem is in where level six is housed, they don't have the toilets in the cell. And so he's seeking an accommodation. Right. He wants the privileges, the good privileges in the unit that doesn't have the privileges. Does that make sense? He wants the unit six privileges. He wants an accommodation, which is the toilet in the cell, without having to give up his privileges. Right. And the problem is, in the unit where the toilets are in the cell, they don't have that But that might be the ultimate resolution of this case, right? But isn't the question here whether there was a valid claim stated? Yes. Yes. Well, I think, and I think the court is allowed to read in to what was stated. And how I view the case is, you can't have, if he's in the special unit where none of the other offenders get those privileges, but Mr. Reinhart does, because he needs a special toilet. Can you make that a combination? And I think what the law is not absolute, that because you're somehow entitled to, you need a toilet in your cell that you get everything else that you're entitled to. I think the question is more whether or not there's a legitimate reason for what the prison did. And the prison put him there was because he needs a toilet in his cell, not because he doesn't get the privileges. Well, it just seems to me the problem becomes, we can probably speculate as to a lot of reasons that may support what the prison did in this case, and you may ultimately win. But on initial review, it's just speculation. I understand. And it's a tough burden to face in this realm. But I think what maybe separates this case from the case where maybe there are more facts to flesh out, is one, that he was offered the spot, they attempted the accommodation. Two, is the realization, I think, in the prison environment, in the records full of, we can't give you the privileges you want in this unit, because otherwise offenders are going to say, why does Reinhart get these privileges and the rest of us don't? It's kind of implicit in a prison management decision. And I think that... But I thought the record shows, and I'm not sure exactly where it is, but that in fact they did give him some of the privileges eventually. I don't believe that to be the case. I thought he retained the... I mean, I think I thought the prison said, eventually said, it's not an all or nothing situation. If you're at level six, you get these six privileges, because of, for certain reasons. We can give you three in the unit with the toilet, but there's reasons we can't give you the other three. I don't think it was necessarily like that, and part of the problem is prisons are notorious for switching level numbers and housing unit numbers, and they do all start to blend. So I apologize for that, but I thought they said, we could give you the higher level privileges, we could move you to the unit without a toilet, we'd put you near a toilet, but there wouldn't be one in your cell. I thought that was the proposed accommodation to him. And I think that belies that, hey, what are we really talking about? And that's kind of what I think underlined the court's decision, is that when they were examining the facts of this case, they were saying, what is this really? And this is really a, do you have some sort of constitutional unequivocal right to have a, both a toilet in your cell, and b, all the privileges which another unit may have. And I think the court looked at it and said, this isn't going to fly under constitutional right standard, it's not going to fly underneath a retaliation standard, and it's not going to fly underneath a ADA standard, because a, there's a legitimate reason for what they're doing. He's got a medical restriction. But again, we just don't have a record, right? Well, I think there's enough there to dismiss it, because I think what would we, if it went back, the question becomes, what could we have to pass as initial review, and we would say to the court, well, judge, motion to dismiss 12B6, failure to state a claim, because we're following his medical directive, as he stated. But why isn't there a, why hasn't he stated a retaliation claim? I think he doesn't state a retaliation claim, because a, what we have offered him, and we have a legitimate reason for his placement in the unit he was placed. But they also, there was this, the rescission, the assertion is there was the rescission of the accommodation, medical accommodation, without any, as he asserts, without any medical assessment, no evaluation. I understand that's the allegation, but to me, it's the allegation that's there that he didn't have, that he was rescinded. Nowhere in his allegations is the claim that he was denied access to a toilet, that his medical evaluation, or his limited activity notice wasn't followed. There's no kind of underlying substance, it's just, they treated me bad because they didn't give me what I wanted. And I don't think that's enough to meet the standard under the ADA or constitutional retaliation or otherwise. I think basically, it's a case of an inmate says, hey, I didn't get the goodies I want, and that's what- But is it a goodie if it's a medical restriction that a doctor has imposed in connection with your, whatever your medical issue is? Correct. And then that's rescinded without any medical assessment. I don't think it was, to that extent, there's no claim in this case that he was denied a toilet in a cell. I mean, he may say, well, they tried to transfer me, they offered me this different unit without a toilet in my cell. Does that mean they're rescinding it? Or they're trying to make an accommodation to him to say, hey, you don't get this. How would you like that? And so I think that's what the rescinding, alleged rescinding was. I don't think there's any claim in here that they've somehow violated his Eighth Amendment constitutional rights by denying him a toilet. I don't think the constitutional claims are before us, are they? Well, I think Judge Jarvie, when he did the initial review, analyzed some under the Eighth Amendment. I understand that counsel didn't raise those, but my point in kind of referencing those is by saying you can't bootstrap otherwise non-meritorious constitutional claims into a meritorious claim just by claiming ADA violations. That's the purpose of me raising those concerns. So that's what we have, and that's the case before the court. We understand it's of a preliminary dismissal at an initial review order. We understand that, hey, the facts are not maybe pled the best, but in this case, there's a pretty full record of what the prison did throughout the grievance process. In this case, they did give Mr. Reinhart a reasonable alternative. The one that fit them, or that was at least possible, and that is giving him a restroom or giving him a toilet near his cell, and that's what's important. I think that's what's driving the court here is that there is nothing that could satisfy Mr. Reinhart that presents a constitutional issue. It's simply his personal request. So we assert that there are adequate facts and laws to support the initial review dismissal by Judge Jarby, and would certainly assert that unless there are further questions that the decision can be affirmed. Thank you. We would also like to express our appreciation to counsel. She did a great job in representing Mr. Reinhart and was certainly a joy to work with. Thank you. Ms. Turner? Thank you. I have three, three and a half points to make. First to start, the state repeats its position that Reinhart is asking for special treatment, but all he is asking for is equal treatment in the same way that there is a way of looking at a handicapped parking spot as special treatment, but it is really just putting people with his disability be accommodated so that he can enjoy the privileges that he would otherwise be entitled to were he not disabled. Second, the state mentioned a few times that it is difficult for prisons to mix prisoners of different privilege levels, but Reinhart alleged in his complaint, this is on page 12 of the appendix, that prisoners with level six privileges already live in his unit. So the prison has allowed a mix of privilege levels within his facility already, and the administrative headaches that the state posits, simply there is no evidence of them in the pleadings. And relatedly as to whether this, the prison has offered a reasonable accommodation, first of all, that is the state's burden to prove, the 28, it's a 28 CFR 35.150, makes clear that that is the state's burden. And here there's simply no evidence, as I said in the record, that it would be unduly burdensome for the state to accommodate Mr. Reinhart. And this court has twice reversed motions to dismiss or summary judgment where there was no evidence of an undue burden. That's in Kutryp and Randolph. Finally, I just wanted to say that the state mentioned as to diverticulitis, that it is not an all the time thing, that he is only, you know, that it, it flares up at different times and that there's no evidence that he needs to be, have a bathroom in his cell when the condition is not active. But that is not what the ADA requires. What all that the ADA requires is that it disable him while the condition is active. And he clearly has alleged disability within those requirements in his complaint. And finally, and your, your honors have already mentioned this, but this case is really just about whether he has alleged sufficient facts to get past this initial pleading hurdle. And because he has done so, we ask that this court reverse. Let me ask you one question. In a typical ADA case that we see, usually involves an employer-employee relationship, and there's an obligation to enter into an interactive process about the reasonable accommodation. And I don't know how that worked, how, how would that, or how should that work in a prison setting where usually everything's handled through a grievance procedure. Prisoner files a grievance, you get a response, you may appeal it to another level. Is, is, does, does that factor in at all in this case? So, you know, the, the sort of ability for a defendant or here, an appellee, to allege that they have sufficiently, they've offered a reasonable accommodation. This court and other courts have, have sort of applied the same type of framework in Title II as they have, I think, in Title I. But you know, there needs to be at least an answer from the state in order for this court to be able to resolve that type of issue. And often those cases proceed to summary judgment because it is such a fact-specific inquiry. Thank you. Thank you. Thank you to both.